UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| |
|---|
| HAIM SHIMSHON,<br><br>                Plaintiff,<br><br>                     v.<br><br>AMDOCS, INC.,<br><br>                Defendant. |

Civil Action No.: ___-cv-_____

5:26-cv-1369 (AJB/CBF)

## COMPLAINT

### JURY TRIAL DEMANDED

Plaintiff Haim Shimshon ("Plaintiff" or "Mr. Shimshon"), by and through his attorneys, Valli Kane & Vagnini LLP, as and for his Complaint against Defendant Amdocs, Inc. ("Defendant" or "Amdocs"), alleges as follows:

### PRELIMINARY STATEMENT

1.  This is an action for age discrimination in employment. Mr. Shimshon, who was born in 1962, devoted more than twenty-four years of his career to Amdocs, including approximately five years working for the company in the United States, and earned consistently positive performance reviews throughout. In 2025, when he was sixty-three years old, Amdocs terminated his employment under the banner of a purported reduction in force. He was the oldest and most senior member of his team and the only member selected for termination. His duties were reassigned to younger colleagues, positions for which he was plainly qualified remained open, and Amdocs filled his supposedly eliminated role with younger workers transferred in from other projects.

1

2.    The reduction-in-force label was a pretext for age discrimination. Amdocs maintained an internal early-retirement program designed to move out its older workforce, a member of its management was overheard extolling "new and young blood" over "old employees who are fixated on old stuff," and the company's own contemporaneous statements about its financial health contradicted the business-necessity rationale it offered Mr. Shimshon. Mr. Shimshon brings this action under the Age Discrimination in Employment Act of 1967 and the New York State Human Rights Law, and seeks back pay, front pay, compensatory damages, liquidated damages, attorneys' fees, and other appropriate relief.

## JURISDICTION AND VENUE

3.    This Court has subject-matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. §§ 1331 and 1343 and under the Age Discrimination in Employment Act, 29 U.S.C. § 626(c). This Court has supplemental jurisdiction over Plaintiff's state-law claim under 28 U.S.C. § 1367(a) because that claim arises from the same common nucleus of operative fact as the federal claim and forms part of the same case or controversy.

4.    Venue is proper in this District under 28 U.S.C. § 1391(b) and 29 U.S.C. § 626 because Plaintiff resides in this District and a substantial part of the events giving rise to the claims occurred in this District. Plaintiff resides in Fayetteville, Onondaga County, New York, and performed his work for Amdocs remotely from his residence, which is the District in which he would have continued to work but for the unlawful conduct and where the effects of the unlawful employment practices were felt.

## ADMINISTRATIVE PREREQUISITES

5.    Plaintiff has satisfied all administrative prerequisites to suit. On or about July 28, 2025, Plaintiff filed a verified Charge of Discrimination against Amdocs with the United States Equal Employment Opportunity Commission ("EEOC"), designated Charge No. 524-2025-02938, alleging age discrimination.

6.    On or about April 22, 2026, the EEOC issued Plaintiff a Notice of Right to Sue with respect to Charge No. 524-2025-02938. This action is commenced within ninety (90) days of Plaintiff's receipt of that notice.

## PARTIES

7.    Plaintiff Haim Shimshon is an individual residing in Fayetteville, Onondaga County, New York. He was born on May 7, 1962, was sixty-three years old at the time of his termination, and is now sixty-four years old. At all relevant times he was an "employee" within the meaning of the Age Discrimination in Employment Act and the New York State Human Rights Law.

8.    Defendant Amdocs, Inc. is a corporation organized under the laws of the State of Delaware (Delaware file number 2032281) that does business throughout the United States, including in the State of New York, and maintains a United States place of business at 625 Maryville Centre Drive, Suite 200, St. Louis, Missouri 63141. At all relevant times, Amdocs was Plaintiff's "employer" within the meaning of the Age Discrimination in Employment Act and the New York State Human Rights Law, and employed well in excess of the statutory minimum number of employees under each statute.

3

## FACTUAL ALLEGATIONS

### *Plaintiff's long and successful career at Amdocs*

9.  Mr. Shimshon began his employment with Amdocs in 2000, when he joined the company in Israel. In June 2020, in connection with his relocation to the United States, he entered into a new employment agreement with Amdocs and thereafter worked for Amdocs in the United States, from June 2020 until his termination effective May 15, 2025.

10. Over the course of his career, Mr. Shimshon held a series of skilled technical and product positions, including Software Development Expert, Solutions Architect, Product Owner, and Product Manager.

11. Mr. Shimshon consistently delivered strong results and received consistently positive performance feedback from his managers. He repeatedly demonstrated the ability to learn new systems and technologies quickly, including by teaching himself new technologies through self-guided study, without formal training from Amdocs.

12. In the period preceding his termination, Mr. Shimshon worked on the account of one of Amdocs' major clients, T-Mobile. His day-to-day work was supervised by a client-side manager, Sunila. His Amdocs-side "metrics manager," Sandip, had little involvement in his daily work.

13. During a recorded performance review on or about November 22, 2024, Sandip acknowledged that the overwhelming majority of Mr. Shimshon's work came from Sunila, that he himself "would not even know" what Mr. Shimshon was doing most of the time, that he had not heard "a complaint or anything" about Mr. Shimshon from Sunila or anyone, and that Mr. Shimshon was "doing all the right things that are expected." When Mr. Shimshon noted that his prior managers had come to his annual reviews with specific feedback gathered from Sunila,

4

Sandip responded only that "each manager does it differently," departing from the process that had governed Mr. Shimshon's reviews in prior years. Sandip identified no performance deficiency, told Mr. Shimshon that he would follow up if any concerns arose, and never thereafter communicated any negative feedback to Mr. Shimshon.

### *Amdocs scrutinizes Plaintiff's contractually authorized remote work*

14. Mr. Shimshon worked remotely from his home in Fayetteville, New York throughout his United States employment, and was the only fully remote member of his team. His remaining team members worked on a hybrid basis and were required to be in the office several days per week.

15. Mr. Shimshon's employment terms expressly permitted him to work remotely.

16. Approximately two months before his termination, Sandip questioned Mr. Shimshon about why he was not reporting to an Amdocs office, notwithstanding the contractual provision authorizing his remote work, to which Mr. Shimshon reminded him. The singling out of Mr. Shimshon's long-approved remote arrangement shortly before his selection for termination reflects the construction of a pretextual record.

### *Amdocs terminates Plaintiff under a pretextual reduction in force*

17. Effective May 15, 2025, Amdocs terminated Mr. Shimshon's employment, characterizing the termination as the elimination of his position as part of a reduction in force purportedly necessitated by business conditions.

18. Mr. Shimshon was the oldest and most experienced member of his team, and he was the only member of that team selected for termination. His younger teammates retained their positions, and his job duties were reassigned to younger, remaining colleagues.

19. Within days of telling Mr. Shimshon that his separation was driven by adverse business conditions, Amdocs' chief executive publicly stated that the company was performing well, and Amdocs issued dividends, contradicting the business-necessity rationale offered to Mr. Shimshon.

20. At the time of the purported reduction in force, Amdocs maintained multiple published job postings for positions for which Mr. Shimshon was fully qualified, including solutions architect, project manager, software engineer, product owner, software architect, software development specialist, and software technical expert. Amdocs neither offered to consider Mr. Shimshon for any other role nor encouraged him to apply for one.

21. A former colleague of Mr. Shimshon, Dani Cohen, who was also terminated at or about the same time and who was likewise over the age of forty, applied for a Solutions Architect position that matched the duties, responsibilities, skills, and experience of the role from which he had been terminated. He was rejected within a single day.

### *Amdocs' pattern and practice of removing older workers*

22. Amdocs maintained an internal early-retirement program, known internally as "Program 80," through which it encouraged older employees to depart the company. The program was implemented in both the United States and Israel. For example, two long-tenured employees, Tamar Lavi and her husband, were offered separation payments under the program to leave the company.

23. After Mr. Shimshon's termination, he learned from a former teammate, Marina Braverman, that another teammate, Elena Shlafer, had accepted the "Program 80" early-retirement package shortly after his termination. Despite that voluntary departure, which opened

a vacancy on the team, Amdocs did not offer to return Mr. Shimshon to the team, undermining any claim that his role was genuinely eliminated for lack of work.

24. Ms. Braverman also informed Mr. Shimshon that two employees were transferred from other projects into his former team. The transfer of other employees into the very team from which Mr. Shimshon's position was supposedly eliminated is irreconcilable with the asserted reduction in force, and Amdocs extended to those employees the opportunity for reassignment that it denied to Mr. Shimshon.

25. One of Amdocs' managing directors was overheard by Mr. Shimshon's colleagues to comment that "new and young blood will bring new ideas, unlike the old employees who are fixated on old stuff."

26. After Mr. Shimshon's termination, Sunila told the T-Mobile team that Mr. Shimshon had left because of a "family emergency," although she knew that he had been terminated, because Mr. Shimshon had personally informed her of his termination. A member of the team, Elena Shlafer, later relayed Sunila's statement to Mr. Shimshon. The provision of a false explanation for Mr. Shimshon's departure supports the inference that Amdocs sought to obscure the true reason for his termination.

27. In connection with Mr. Shimshon's termination, Amdocs provided a disclosure under the Older Workers Benefit Protection Act identifying, by job title and age, the employees in the applicable decisional unit who were and were not selected for the program. That disclosure reflects that Amdocs' oldest employees were selected at a disproportionate rate: employees aged sixty and older, the cohort that includes Mr. Shimshon, were selected at approximately twice the rate of employees under the age of sixty.

28. The encouragement of older workers to depart, the comment by management, the retention and inward transfer of younger workers, the disproportionate selection of the oldest employees, and the contemporaneous availability of positions for which Mr. Shimshon was qualified together demonstrate that Mr. Shimshon's age was the but-for cause, and a motivating and determinative factor, in his termination.

### *Harm to Plaintiff*

29. At the time of his termination, Mr. Shimshon's annual base salary was approximately $140,000, together with a target bonus of ten percent and standard employee benefits. As a direct and proximate result of his termination, Mr. Shimshon has suffered and continues to suffer substantial economic loss, including lost wages, benefits, and other compensation. Given the length of his tenure with Amdocs, the probability of his obtaining fully comparable employment is diminished, and his termination has caused a significant and continuing loss of earnings.

30. Following his termination, Mr. Shimshon diligently searched for comparable employment and applied for numerous positions. He remained unemployed following his termination on May 15, 2025 until he began a new position on January 20, 2026, and he has maintained records of his job-search efforts.

31. As a further direct and proximate result of Amdocs' conduct, Mr. Shimshon has suffered emotional distress and related physical symptoms, including stress-related chest pain, anxiety, and insomnia, for which he has sought and continues to receive medical treatment, including medication.

32. In connection with his separation, Amdocs offered Mr. Shimshon a severance payment conditioned on his execution of a release of claims. Mr. Shimshon declined to sign the release.

## FIRST CAUSE OF ACTION

**Age Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.***

33. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

34. At all relevant times, Plaintiff was over the age of forty and within the class protected by the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 631(a).

35. Defendant is an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b).

36. Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment, and terminated his employment, because of his age, in violation of 29 U.S.C. § 623(a).

37. Plaintiff's age was the but-for cause of Defendant's adverse employment actions, including his termination.

38. Defendant's violation of the ADEA was willful, in that Defendant knew or showed reckless disregard for whether its conduct was prohibited by the ADEA, entitling Plaintiff to liquidated damages under 29 U.S.C. § 626(b).

39. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including lost wages and benefits, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**Age Discrimination in Violation of the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.***

40. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

41. At all relevant times, Plaintiff performed his work for Defendant within the State of New York, and Defendant was an "employer" within the meaning of the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law § 292.

42. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment, and terminated his employment, because of his age, in violation of N.Y. Executive Law § 296.

43. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered economic loss and emotional distress, in an amount to be determined at trial, and is entitled to all remedies available under the NYSHRL, including compensatory and punitive damages and attorneys' fees under N.Y. Executive Law §§ 297 and 300.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award:

a.      Back pay, front pay, and lost benefits, with prejudgment interest;

b.      Liquidated damages under the ADEA, 29 U.S.C. § 626(b);

c.      Compensatory damages for emotional distress and related harm under the NYSHRL;

10

d. Punitive damages under the NYSHRL;

e. Reasonable attorneys' fees, expert fees, and costs of this action, as provided by law;

f. Pre- and post-judgment interest; and

g. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: Garden City, New York

July 14, 2026

Respectfully submitted,

**VALLI KANE & VAGNINI LLP**

By:  */s/ Robert J. Valli, Jr.*
    Robert J. Valli, Jr.
    rvalli@vkvlawyers.com
    Matthew L. Berman
    mberman@vkvlawyers.com
    600 Old Country Road, Suite 519
    Garden City, New York 11530
    (516) 203-7180
    Attorneys for Plaintiff